**SCURA, WIGFIELD, HEYER,**
**STEVENS & CAMMAROTA, LLP.**
1599 Hamburg Turnpike
Wayne, New Jersey 07470
Tel.: 973-696-8391
David L. Stevens, Esq.
dstevens@scura.com
*Counsel to Debtors, Karamjeet & Meena Sodhi*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| *In re:* | Case No. 21-17033-CMG |
| KARAMJEET S. SODHI & MEENA SODHI, | Chapter 11 - Subchapter V |
| | Judge: Hon. Christine M. Gravelle |
| Debtors. | Hearing Date: December 19, 2023 |

**MOTION FOR AN ORDER AUTHORIZING AND APPROVING: (I) THE SALE OF REAL PROPERTY; (II) PAYMENT OF PROFESSIONAL FEES FROM SALE PROCEEDS; (III) WAIVING THE FOURTEEN-DAY STAY PURSUANT TO FED. R. BANKR. P. 6004(h); AND (IV) GRANTING OTHER AND RELATED RELIEF**

The debtors-in-possession in the above referenced matter, Karamjeet Sodhi and Meena Sodhi (the "Debtors"), by and through the undersigned counsel, Scura, Wigfield, Heyer, Stevens & Cammarota, LLP, respectfully represent:

**I.    INTRODUCTION**

This motion is submitted for an order, pursuant to 11 U.S.C. §§ 105 and 363(b), and Fed. R. Bankr. P. 2002, 6004, and D.N.J. L.B.R. 6004-1: (I) authorizing the sale of real property; and (II) authorizing compensation to retained professionals for approved fees and costs from sale proceeds; and (III) waiving the fourteen-day stay; and (IV) granting other and related relief (the "Motion").  In support of this Motion, the Debtor filed a certification simultaneously herewith,

which sets forth the facts relied upon and are incorporated herein by reference.  Debtor respectfully

states as follows:

## II.    <u>JURISDICTION AND VENUE</u>

The Court has jurisdiction over this matter pursuant to 28 <u>U.S.C.</u> §§ 157 and 1334. This is

a core proceeding pursuant to 28 <u>U.S.C.</u> § 157(b)(2)(N). Venue is proper in this Court pursuant to

28 <u>U.S.C.</u> § 1408 and 1409.

## III.    <u>BACKGROUND</u>

On September 3, 2021 (the "Petition Date"), the Debtors commenced this bankruptcy

proceeding by filing a voluntary petition for relief pursuant to Chapter 13 of Title 11 of the

Bankruptcy Code, with the primary purpose of curing mortgage arrears on their property and

prevent an impending foreclosure of their home. Debtors filed a Motion to Convert Case to Chapter

11, pursuant to debt limit concerns raised in the Debtors' chapter 13 case. On December 2, 2021,

an order was entered granting the conversion to chapter 11. <u>See</u>, Docket Entry No 38. On January

24, 2022, Debtors filed an Amended Petition, indicating that Debtors wish to proceed under the

Subchapter V designation of chapter 11. <u>See</u>, Docket Entry No. 56. Since the conversion, the

Debtors have remained in possession of their assets and continued the management of their

bankruptcy estate as debtors-in-possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code.

No request has been made for the appointment of a trustee or an examiner in this case and no

official committee has yet been appointed by the Office of the United States Trustee.

The Debtors are the owners of the residential real property located at 14 St. James Street,

Monroe, New Jersey (the "Property"). The Debtors are individuals, husband and wife, engaged in

business. They own and reside on the Property with their children. The Property is a single-family

home.  A Comparable Market Analysis ("CMA") estimates the value to be $1,150,000.00. The

CMA is annexed to the Debtors' Certification as **Exhibit A**.

The Property is encumbered by a first mortgage lien held by LoanCare, LLC ( "LoanCare") (Proof of Claim No. 17 in Claims Registry), with an approximate payoff amount of $538,181.66 at the time the Proof of Claim was filed. The property has a second mortgage lien held by ABS Loan Trust VI ("ABS") (serviced by Select Portfolio Servicing, Inc.) (Proof of Claim No. 5 in Claim Registry), with an identified approximate payoff amount of $319,670.51 with interest accruing, per the Motion for Relief by the Creditor filed March 23, 2022. (Dkt. No. 69). The same Motion references a per diem interest of $43.78 as of February 4, 2022. As of November 16, 2023, 650 days have passed, and at approximately $43.78 per day, an additional estimated $28,457.00 is owed in interest. The estimated payoff amount for ABS is $348,127.51.

The Debtor retained the services of Christopher Stiles as a realtor, with the approval of this Court, to assist with the sale of the Property. However, that realtor was unable to finalize a sale. The Debtors then retained their son, Kunal Sodhi (the "Realtor/Broker"), subject to Court authorization of the Application pending with this Court. Kunal is not earning a commission. Although it is recognized that Kunal is not a disinterested party, Debtors assert that the estate is benefited because only the buyer's agent will be compensated thus increasing net sale proceeds to be contributed to the Plan. The Realtor/Broker made an MLS listing for a fee of $150.00, and held an Open House for the Property on October 15, 2023. About 35 independent groups of couples or families attended the Open House. After the Open House, fourteen offers were received. Instead of negotiating each offer, the Realtor/Broker set a "highest and best" deadline for offers for the Friday after the Open House, which was October 20, 2023. The highest and best highest and best offer was made by Nirmal Suratia and Tanu Javeri at $1,225,000.00.

Subject to Court authorization, the Debtors have entered into a Contract for Sale and a

Contract Rider (together, the "Purchase Agreement") to sell the Property to Nirmal Suratia and Tanu Javeri (the "Purchasers"), for the purchase price of $1,225,000.00. The Purchasers (and their realtor) were unknown to the Debtors and Kunal prior to the introduction by the Purchaser's realtor and there are no other agreements between the Debtor and Purchaser other than what was agreed to in the Purchase Agreement. The Purchase Agreement is annexed to the Certification of the Debtor as **Exhibit B**. The Purchase Agreement and the sale to the Purchasers is contingent upon and subject to this Court's approval.  With the sale, the Debtors move to reimburse their Realtor/Broker, Kunal Sodhi, the $150.00 listing service fee.  The Broker acting for the Purchasers, Uma Sogani, will receive a commission of 2% of the sale price of $1,225,000.00.  That $24,500.00 will have the listing service fee deducted, and she will receive $24,350.00 in total from the Purchasers.

## IV.    LIENS ON THE PROPERTY

Liens that may encumber the Property include:

   a.   Any and all unpaid property taxes;

   b.   Any and all unpaid municipal charges for water and/or sewer;

   c.   First mortgage lien held by Loan Care (Proof of Claim No. 17 in Claims Registry), with an approximate payoff amount of $538,181.66.

   d.   Second mortgage lien held by ABS (Proof of Claim No. 5 in Claim Registry), with an approximate payoff amount of $348,127.51.

## V.    EQUITY ANALYSIS

The expected equity received from the sale of the Property is as follows:

| Property | Purchase Price | (-) Mortgage Liens | (-) Realtor Fee & Real Estate Attorney | (-) Homestead Exemptions | Estimated Non-Exempt Equity |
|---|---|---|---|---|---|
| 14 St. James Street, Monroe, NJ | $1,225,000.00 | 1st Mortgage $538,181.66 | Buyer's Broker Commission = $24,350.00; Listing Service Fee = $150.00 | $50,300.00 | |
| | | 2nd Mortgage $348,127.51 | | | **$263,890.83** [$1,225,000.00 – (538,181.66 + 348,127.51 + 24,350.00 + 150.00 + $50,300.00)] |

## VI.    TERMS OF THE SALE AGREEMENT

The pertinent terms of the Purchase Agreement for 14 St. James Street, Monroe, New Jersey, are as follows:

    a. **Purchase Price**. $1,225,000.00
       i. Initial Money Deposit: $0.00
          1. Purchasers will pay no deposit until the Debtors receive Court Approval of the sale.
      ii. Additional Deposit:  $50,000.00
      iii. Mortgage: $980,000.00
      iv. Balance Due at Closing: $195,000.00

    b. **Purchasers**.  Nirmal Suratia and Tanu Javeri

    c. **Anticipated Closing**.  The closing is anticipated to occur December 11th, 2023, after the sale hearing held before the Bankruptcy Court approving the sale of the Property to Purchaser in accordance with 11 U.S.C. § 363(b) unless otherwise extended by written agreement of the parties. **The target closing date is December 11th, in order to allow the Purchasers to move in on December 14th, 2023, before a surgery on December 15th, 2023.**

    d. **"As-Is" Sale of Property.**  The Seller is selling this property "as-is," which means that the Seller shall not be obligated to provide or perform any repairs, treatments, reports, paperwork, or remedial measures (hereinafter "repairs").

Any provision in the contract or prior rider(s) requiring mandatory repairs is hereby deleted.  The foregoing shall not apply to the Seller's obligation to obtain the municipal Certificate of Occupancy / Fire Safety Certificate.

e.  **Quality and Insurability of Title**. Seller will convey title via statutory warranty deed at closing.  Seller agrees to provide marketable title, free and clear of any lien or encumbrance.

f.  **Appraisal Waiver**. The Buyer is purchasing the Property "as is".  The appraisal is completely waived.  That waiver is clarified as follows:  The Buyer represents and agrees that in the event the lender's appraisal is less than the sale price, and if the low appraisal results in a loan application rejection by the lender, the Buyer agrees that Buyer shall provide additional down payment in order to induce the lender to agree to provide a mortgage commitment.  A mortgage denial based upon a low appraisal shall not be grounds for termination of this Contract by the Buyer.  In addition the Buyer understands and agrees that the Buyer shall not have an independent right to terminate based upon a low appraisal.

g.  **Inspection.** The Buyer's performance is not contingent upon inspections. There is no inspection contingency.

h.  **Damage to the Property**. The risk of loss or damage to the Property by fire or otherwise, except ordinary wear and tear, is the responsibility of Seller until the Closing.  In case the damage to the property is in excess of 10% of the purchase price, the Buyer or Seller shall have the option to void the agreement and receive back all deposit monies.

The Purchase Agreement and the sale to the Purchasers is contingent upon and subject to this Court's approval.  The Debtor believes the proposed sale provides the highest and best value to the bankruptcy estate.

### VII.    REQUEST FOR RELIEF AND BASIS THEREFORE

**A.**    **The Debtor Should be Authorized to Sell the Property in Accordance with Sections 105(a), 541, and as guided by 363(b)(1) of the Bankruptcy Code.**

The Debtor's interest in the Property constitutes property of the bankruptcy estate pursuant to Bankruptcy Code Section 541.  11 U.S.C. § 541.  Under Bankruptcy Code Section 1303, the Debtor has the authority of a trustee to sell the Property, and property of the estate can be sold

pursuant to Bankruptcy Code section 363(b)(1) and section 1322(b)(8).  *See also*, Fed. R. Bankr.

P. 6004(f)(1) (authorizing sales outside of the ordinary course of business to be conducted privately

or by public auction).  Additionally, Bankruptcy Code Section 105(a) allows the Court to "issue

any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the

Bankruptcy Code]." 11 U.S.C. § 105(a).

### i. The Purchaser is a Good Faith Purchaser in accordance with 11 U.S.C. §363(m)

Although the Bankruptcy Code does not provide guidance regarding circumstances under

which a sale of assets can be approved (other than the requirement to provide notice and a hearing),

the United States Court of Appeals for the Third Circuit in the seminal case of In re Abbotts Dairies

of Penn., Inc., 788 F.2d 143, 149-50 (3d Cir. 1986), interpreted Section 363(b) to require a finding

by the Bankruptcy Court that the purchaser of a debtor's assets is a good faith Purchaser.  The

Third Circuit construed the "good faith Purchaser" standard to mean one who purchases in "good

faith" and for "value." Abbotts Dairies, 788 F.2d at 147. Moreover,

> Neither the Bankruptcy Code nor the Bankruptcy Rules define 'good faith.'
> In construing this phrase, courts have therefore borrowed from traditional
> equitable principles, holding the concept of 'good faith' speaks to the
> integrity of a party's conduct in the course of the bankruptcy sale
> proceedings. A purchaser's good faith status at a bankruptcy sale would be
> destroyed by misconduct involving 'fraud, collusion between the purchaser
> and other bidders or the trustee, or an attempt to take grossly unfair
> advantage of other bidders."

(citations omitted) In re Tempo Technology Corp., 202 B.R. 363, 367 (Bankr. Del. 1996).

The Abbotts Dairies Court then compared a Section 363(b) purchaser to a purchaser at a

judicial sale:

> The requirement that a purchaser act in good faith . . . speaks to the integrity
> of his conduct in the course of the sale proceedings. Typically, the
> misconduct that would destroy a purchaser's good faith status at a judicial

> sale involves fraud, collusion between the purchaser and other bidders or
> the trustee, or an attempt to take grossly unfair advantage of other bidders.

Abbotts Dairies, 788 F.2d at 147 (quoting In re Rock Indus. Mach. Corp., 572 F.2d 1195, 1198 (7th Cir. 1978)). Finally, the Court noted that "courts have held that '[f]air and valuable consideration is given in a bankruptcy sale when the purchaser pays 75% of the appraised value of the assets'." Abbotts Dairies, 788 F.2d at 149 (quoting In re Rock Indus. Mach. Corp., 572 F.2d at 1197; In re Karpe, 84 B.R. 926, 933 (Bankr. M.D. Pa. 1988).

Here, the proposed sale of the Property satisfies the "good faith" prong of the Abbotts Dairies test. First, the proposed purchase price of $1,225,000.00 for the Property is fair and was negotiated in good faith thereby satisfying the Abbots Dairies test. *See*, Comparative Market Analysis attached to the Certification of the Debtor as Exhibit A. Second, the Debtor has fully disclosed and requested the Court's approval of the terms and conditions of the proposed sale and provided notice of the sale to the Court for authorization. *See* In re Colony Hill Assoc., 111 F.3d 269 (2d Cir. 1997) (determination of "good faith" is based on traditional equitable principles, including whether there has been full disclosure to the Bankruptcy Court). Accordingly, notice will also be provided to all parties-in-interest in the Debtor's bankruptcy case.

The Purchaser has offered more than the value estimate in the CMA for the property. There is no separate agreement other than the contract for sale, and there have been no allegations that there was any misconduct by the parties related to the Purchase Agreement. The parties here are acting in good faith because the Motion and all facts in support of the proposed sale will be served on all interested parties and approved by the Court.

### ii.   The Sale is for a Sound Business Purpose

The Third Circuit appears to have adopted the "sound business purpose" test when examining the reason for an asset sale first articulated in Official Comm. Of Unsecured Creditors

v. Lionel Corp., 722 F.2d 1063, 1067 (2d Cir. 1983); *see*, In re Indus. Valley Ref. & Air Cond.

Supplies, Inc., 77 B.R. 15, 20 (Bankr. E.D. Pa. 1987).  "In determining whether to authorize use,

sale or lease of property of the estate under [Section 363], courts require the [Trustee] to show

that a sound business purpose justifies such actions." In re Culp, 550 B.R. 683, 697 (D. Del.

2015).

In Lionel, the Second Circuit held that:

> There must be some articulated business justification . . . for using, selling, or
> leasing property out of the ordinary course of business before the bankruptcy judge
> may order such disposition under [s]ection 363(b) . . . The rule we adopt requires
> that a judge determining a [section] 363(b) application expressly find from the
> evidence presented before him at the hearing a good business reason to grant such
> an application.

Lionel, 722 F.2d at 1070-71.

In Summit Glob. Logistics, Inc., the Third Circuit held that:

> "In accordance with Lionel and subsequent precedent within the Third
> Circuit, [d]ebtors must prove the following: (1) a sound business purpose for
> the sale; (2) the proposed sale price is fair; (3) the debtor has provided
> adequate and reasonable notices; and (4) the Purchaser has acted in good
> faith."

In re Summit Glob. Logistics, Inc., 2008 WL 819934, at *9 (Bankr. D.N.J. Mar. 26, 2008),

*citing* In re Exaeris, Inc., 380 B.R. at 744; *accord* In re Sovereign Estates, Ltd., 104 B.R.

702, 704 (Bankr. E.D. Pa. 1989).

The proposed sale of the Property meets the Third Circuit's requirement for a sale of assets

out of the ordinary course of business.  First, a sound business reason exists because should the

creditors foreclose, there may exist a deficiency for which the Debtor may be liable. Second,

carrying the costs of maintaining a home would be an unnecessary added expense. and a sale of

the Property will pay all secured claims encumbering the Property, which would otherwise

continue to accrue unpaid interest. Further, the sale was an integral component for funding the

confirmed Chapter 11 Plan and required by the confirmation order.  The Debtor will provide

adequate notice to all parties entitled to receive notice of the proposed sale. Finally, there is no evidence of bad faith with regard to the sale of the Property and therefore, the Debtor's business judgment should be taken at face value.

As demonstrated above, the Purchaser is a good faith purchaser and the purchase price of $1,225,000.00 represents a fair market value for the purchase of the Property. As stated above, there are no agreements between the Debtor and the Purchaser other than what has been agreed to in the Purchase Agreement and the accompanying supporting documents. Thus, the Debtor respectfully submits that the Purchaser offer meets the "sound business purpose" test articulated in <u>Lionel</u>. Consideration of the above factors, in this case, weighs in favor of approval and the purchase price the estate realizes will be fair and reasonable.

## VIII.    <u>PROFESSIONAL FEES PAID FROM SALE PROCEEDS</u>

The original realtor, Christopher Stiles, was terminated by the Debtors in the first week of October, 2023. The Debtors worked with their son and Realtor/Broker, Kunal Sodhi, to list and sell the Property.  The Debtors seek to pay only the reimbursement of the $150.00 listing fee paid by their son and Realtor/Broker Kunal Sodhi, pending the Application for Retention submitted to this Court concurrent with the instant motion.

The Broker acting for the Purchasers, Uma Sogani, will receive a commission of 2% of the sale price of $1,225,000.00. That $24,500.00 will have the listing service fee deducted, and she will receive $24,350.00 in total from the Purchasers.

The Debtors' First Amended Chapter 11 Small Business Subchapter V Plan of Reorganization, filed on November 7, 2022 (Dkt. No. 132) and Confirmed by this Court on March 15, 2023 (Dkt. No. 151), calls for payment in full to the Debtors' Bankruptcy Counsel and to the Standing Subchapter V Trustee upon Sale of the Property.  (13-14, Dkt. No. 132).  To the extent

non-exempt net sale proceeds are insufficient for payment in full of Administrative Expense

Claims, Counsel shall be paid from exempt sale proceeds.  (*Id.*).  "The amount to be paid monthly

towards administrative expense claims from Debtors' cash flow. . . shall be reduced to the extent

that the administrative expense claims are paid from the sale proceeds. The resulting additional net

cash flow will be contributed to the funding of the Plan and paid to creditors in order of priority."

(*Id.*).

## IX.   WAIVER OF 14 DAY STAY

Pursuant to Fed. R. Bankr. P. 6004(h), unless the Court orders otherwise, orders authorizing

the sale of the assets pursuant to Section 363 of the Bankruptcy Code automatically stay for

fourteen (14) days after entry of the order. The purpose of Rule 6004(h) is to provide sufficient

time for an objecting party to request a stay pending appeal before the order can be implemented.

See, Advisory Committee Notes to Fed. R. Bankr. P. 6004(g) (redesignated as subsection "h" by

the 2005 Bankruptcy Reform Act).

Although Bankruptcy Rules 6004(h) and the Advisory Committee Notes are silent as to

when a court should "order otherwise" and eliminate or reduce the fourteen-day stay, bankruptcy

commentators have suggested that the period should be eliminated to allow a sale or other

transaction to close immediately where there has been no objection to the procedure. *See*, 10

Collier on Bankruptcy ¶ 6004.09 (15th ed. rev. 2003).

The Debtor asserts that given the goal by the parties, in this case, to liquidate assets and

bring this case to conclusion in the short term, there is cause to waive the stay and the Debtor

requests that upon approval of the sale, the fourteen (14) day period pursuant to Rule 6004(h) be

waived by the Court.

## X.    NOTICE

Notice of this Motion is being provided to the following parties: (i) all parties in interest (ii) secured parties; (iii) the Office of the United States Trustee for the District of New Jersey; (iv) all parties who have filed and served a *Notice of Appearance*; and (vi) all persons or entities purporting to have a lien or judgment, through his counsel, if represented, which may be an encumbrance on the Property.  The Debtor submits that no other or further notice is required.

## XI.    CONCLUSION

WHEREFORE, the Debtor respectfully requests the entry of order effective immediately (a) authorizing the sale of Property in accordance with the Purchase Agreement to be entered into by the Debtor and Purchaser; (b) authorizing all actions necessary to convey title to the Property as proposed; (c) authorizing payment to retained professionals at closing, and (d) waiving the fourteen-day stay pursuant to Fed. R. Bankr. P. 6004(h).

**SCURA, WIGFIELD, HEYERS,
STEVENS & CAMMAROTA, LLP.**
*Attorneys for Debtor*

Dated: November 20, 2023                    By: /s/  *David L. Stevens*
David L. Stevens, Esq.